■ GURFEIN BROS., INC., et al., Appellants, v HANOVER INSURANCE COMPANY, Respondent. [670 NYS2d 423] —Order, Supreme Court, New York County (Herman Cahn, J.), entered October 3, 1996, granting defendant's motion for summary judgment dismissing the complaint, unanimously reversed, on the law, without costs, summary judgment denied, and the complaint reinstated. Plaintiffs' appeal from order, same court and Justice, entered July 3, 1997, denying plaintiffs' motion for renewal and reargument, unanimously dismissed, without costs, as academic in view of the foregoing.

Plaintiffs are Fifth Avenue diamond dealers who held a jewelers block insurance policy with defendant. The policy insured against loss of merchandise while in the custody of plaintiffs' selling agents, up to a coverage limit of $300,000. The policy contained an exclusion for "[u]nexplained loss, mysterious disappearance or loss or shortage disclosed on taking inventory."

Non-party Mason Fletcher was one of plaintiffs' sales representatives. Sometime during his trip home to Jackson, Mississippi, from a sales trip to Memphis, Tennessee, $265,000 of plaintiffs' diamonds disappeared from the trunk of Fletcher's car. He surmised that the diamonds had been stolen when he pulled over to change a flat tire. When defendant disclaimed coverage, plaintiffs brought this action.

At his deposition, Fletcher described in detail his movements during the two-day round-trip between Jackson and Memphis. The diamonds were in his possession when he left Astor Jewelers, the last of the five stores he visited in Memphis on February 4, 1994. He put the briefcase containing the diamonds in the trunk of his car at about 1:45 P.M., got into the car and

started driving home. He did not exit the car until it suddenly got a flat tire as he was driving south on Interstate 55. Though unable to determine the exact location where he pulled over, he estimated that it was about 75 miles south of Memphis and that the stop occurred sometime between 2:45 and 3:30 P.M. He noticed two cars had pulled over just ahead of him, containing six dark-skinned individuals.

Although the tire was new, it appeared to have a "noticeable cut," as if it had been slashed. When Fletcher opened the trunk to retrieve the spare tire and the jack, he pushed the briefcase containing the diamonds to the back of the trunk and covered it. He did not recall closing the trunk completely; he may have pushed it near shut but not locked it. Because he had to kneel close to the front right wheel to change the tire, he would not have seen a thief approaching from the left. Nor would he have heard anyone, due to the noise from passing traffic.

When he put the tools and the old tire back in the trunk, he did not see anything missing. However, since he had covered up the briefcase in order to hide it, he would not necessarily have noticed its absence at first glance. After he resumed his journey, the car was not out of his sight until he reached Andrew Jewelers in Jackson at about 6:00 P.M., at which point he first inspected the trunk more thoroughly and found that the diamonds were gone.

Relying upon Fletcher's testimony, defendant moved for summary judgment based on the "mysterious disappearance" exclusion in the policy. Defendant argued that since Fletcher could not specify exactly when or where he had stopped and had not seen or heard the diamonds being stolen, plaintiffs' claim that a theft had occurred was mere speculation.

In opposition, plaintiffs maintained that defendants had not met their burden of proving that the exclusion applied, because plaintiffs' circumstantial evidence of theft raised triable issues as to how the loss had occurred. Along with their opposition papers, plaintiffs submitted a copy of a newspaper article describing prior jewelry thefts under similar circumstances in the area where the instant loss allegedly occurred. The article stated that six Latin American illegal aliens had been arrested for these crimes, and were suspected of belonging to a nationwide ring of jewel thieves who commonly operated by slashing a jewelry salesman's tire and then robbing him when he stopped to change the tire. Plaintiffs also submitted copies of various traveling-salesmen bulletins from a jewelers' security organization, warning against theft by tire slashing. Finally, plaintiffs submitted the deposition testimony of Astor's

co-manager, who testified that he was familiar with other incidents of diamond salesmen being robbed in the area, and that three salesmen had had their tires slashed while they were in his store.

Nonetheless, the motion court granted summary judgment to defendants because the record was "devoid of proof as to the exact manner in which plaintiffs' goods were lost or disappeared." We agree with plaintiffs that this ruling impermissibly shifted the burden onto them to prove that the exclusion did not apply, and that contested factual issues do indeed preclude a grant of summary judgment.

Once a loss has been established, the burden is on the insurer to prove that an exclusion in the policy applies to the facts of this particular case (*Seaboard Sur. Co. v Gillette Co.*, 64 NY2d 304, 311). Policy exclusions "are not to be extended by interpretation or implication, but are to be accorded a strict and narrow construction" (*supra,* at 311).

On a motion for summary judgment, the court's role is issue finding, not issue determination. Where the insured, in opposition to the insurer's motion for summary judgment, presents circumstantial evidence of the manner in which the loss occurred, the motion court should view this evidence in the light most favorable to the non-movant (*Citibank v Dutka*, 74 AD2d 520, 521, *appeal dismissed* 50 NY2d 928), and may not evaluate the parties' credibility to decide whose version of the facts is true (*Consolidated Edison Co. v Jet Asphalt Corp.*, 132 AD2d 296, 299).

In *Edelstein & Co. v Ambassador Ins. Co.* (86 AD2d 83, 85, *appeal dismissed* 59 NY2d 763), where the insured moved for summary judgment based on detailed records of the stolen jewelry and on its president's affidavit describing how he was robbed in the store at gunpoint, this Court held that the insurer's "allegations * * * suggesting in conclusory fashion that no such incident occurred" were insufficient even to raise a triable issue of fact. In the instant case, though plaintiffs' evidence is circumstantial rather than direct, defendant's arguments on appeal—consisting largely of sarcastic comparisons between plaintiffs' theft hypothesis and popular speculations about the disappearances of Jimmy Hoffa and Amelia Earhart—are at the very least insufficient to persuade us that no factual issue exists.

Other cases interpreting the "mysterious disappearance" exclusion demonstrate that plaintiffs' evidentiary submissions were sufficient to raise a triable issue as to whether the loss resulted from theft. The insurer's summary judgment motion

will be denied if plaintiff presents evidence of "a series of circumstances concerning the [loss] which, if accepted by [the] triers of * * * fact, might well lead to the inference" that a theft had occurred (*Van Dutch Prods. Corp. v Zurich Ins. Co.*, 67 AD2d 844, 845). In *Van Dutch*, plaintiff presented evidence that two months prior to the disappearance of the sugar from its warehouse, a ground floor window had been broken and that an inspection after discovery of the loss showed that the putty on the repaired window had been replaced with non-hardening putty, presumably to allow easy access by an intruder. Since an inference of theft could rationally be drawn from this evidence, the loss was not "mysterious" or "unexplained" as a matter of law (*supra,* at 846). Similarly, in *Callahan's Shursave v Traveler's Cos.* (159 AD2d 936), the affidavits of the insured's employees, alleging that the inventory loss was caused by employee theft, raised an issue of fact, defeating the insurer's summary judgment motion based on the "mysterious disappearance" exclusion.

In *Stella Jewelry Mfg. v Naviga Belgamar* (885 F Supp 84), the United States District Court for the Southern District of New York, sitting in diversity jurisdiction and applying New York law, found the "mysterious disappearance" exclusion in a jewelers' block policy inapplicable under circumstances similar to those herein. While on a business trip, the insured's president had parked his car in the driveway of the friend's house where he had left the two bags of jewelry for safekeeping. After collecting the bags, he set them down near his feet, then turned aside for a few seconds to make room in the trunk. When he bent down to pick up the bags, one was gone. He had not seen or heard anyone approach (*supra,* at 84). The bag was too heavy to have blown away (*supra,* at 86).

"In the instant dispute, 'mysterious disappearance' is interpreted as a factual circumstance in which a reasonable person could not infer based on the evidence presented the manner in which the reported loss occurred." (*Supra,* at 85.) The court held that theft was the most plausible inference to be drawn from the facts presented by the insured. That the exact manner of the theft was still a mystery did not render the loss itself mysterious or unexplained (*supra,* at 86). On that basis, the court actually granted partial summary judgment to the insured, barring the insurer from raising the "mysterious disappearance" defense at trial. (*Compare, Goldman & Sons v Hanover Ins. Co.*, 80 NY2d 986, 987 [in which the insured *conceded* that "mysterious disappearance" exclusion in jewelers' block policy applied to its president's loss of a bag of

jewelry during a business trip because he "was unable to say how or where the loss occurred"].) In the case at bar, by contrast, plaintiffs have offered an explanation, supported by circumstantial evidence from several sources, which if believed by the trier of fact could reasonably support an inference of theft. From the evidence presented by plaintiffs, the trier of fact could infer the approximate time and place of the theft as well as the methods and possible identity of the thieves. Defendant has failed to show that this version of events is so illogical, implausible or speculative as to warrant summary judgment for the insurer. The complaint should therefore be reinstated.

Since we are reversing the motion court's order, plaintiffs' appeal from the denial of their motion for renewal and reargument of that order is dismissed as academic. Concur—Sullivan, J. P., Rosenberger, Williams and Andrias, JJ.