■ PEPSICO, INC., et al., Respondents, v WINTERTHUR INTERNATIONAL AMERICA INSURANCE COMPANY, Appellant, et al., Defendant. [806 NYS2d 709]—

In an action, inter alia, to recover damages for breach of contract, the defendant Winterthur International America Insurance Company appeals from an order of the Supreme Court, Westchester County (Rudolph, J.), entered December 13, 2004, which, inter alia, denied its cross motion, among other things, for summary judgment dismissing the causes of action to recover for damage to property.

Ordered that the order is affirmed, with costs.

On a prior appeal in this case, which involves "off-tasting" soft drink products manufactured by the plaintiffs Pepsico, Inc., and Pepsi Bottling Group, Inc. (hereinafter collectively Pepsico), resulting from faulty raw ingredients supplied by third-party suppliers (see Pepsico, Inc. v Winterthur Intl. Am. Ins. Co., 13 AD3d 599 [2004]), the defendant Winterthur International America Insurance Company (hereinafter Winterthur) sought dismissal of the damage claims under two exclusions in the policy issued to the plaintiffs. Having lost the argument that the plaintiffs were excluded from recovery under the "seepage and/or pollution and/or contamination" and "change of flavor" exclusions, Winterthur subsequently sought dismissal claiming the plaintiffs were precluded from recovery on other grounds, including different exclusions in the policy.

We reject Winterthur's contention that the plaintiffs' products were not "physically damaged" under the all-risk first-party property insurance policy issued by Winterthur. While "physical damages" are not defined in the policy, we disagree with Winterthur that to prove "physical damages" the plaintiffs must prove that "there has been a distinct demonstrable alteration of [the] physical structure [of the plaintiffs' products] by an external force," in other words, that the product has gone from good to bad. It is sufficient under the circumstances of this case involving the unmerchantability of beverage products that the product's function and value have been seriously impaired, such that the product cannot be sold (*see General Mills v Gold Medal Ins. Co.*, 622 NW2d 147 [Minn 2001]; *Pillsbury Co. v Underwriters at Lloyd's, London*, 705 F Supp 1396 [1989]; *National Union Fire Ins. Co. of Pittsburgh, Pa. v Terra Indus.*, 216 F Supp 2d 899 [2002], *affd* 346 F3d 1160 [2003], *cert denied* 541 US 939 [2004]; *Shade Foods, Inc. v Innovative Prods. Sales & Mktg., Inc.*, 93 Cal Rptr 2d 364 [Cal 2000]; *Zurich Am. Ins. Co. v Cutrale Citrus Juices USA, Inc.*, 2002 WL 1433728, 2002 US Dist LEXIS 26829). Neither the fact that the product was not rendered unfit for human consumption (*see General Mills v Gold Medal Ins. Co.*, *supra*; *Zurich Am. Ins. Co. v Cutrale Citrus Juices USA*, *supra*), nor the fact that the product's unmerchantability may have gone undetected initially, mean that a physical event did not occur for which injury or damage resulted.

Further, we agree with the Supreme Court that there was no meeting of the minds between the parties regarding a manufacturing and processing errors exclusion. The record overwhelmingly supports the conclusion that the plaintiffs did not agree to amend the policy in such a manner.

Finally, the Supreme Court properly concluded that the proper measure of damages, pursuant to the valuation provisions set forth in the policy, is the "regular cash selling price," since Pepsico, Inc., as opposed to Pepsi Bottling Group, Inc., manufactures beverage concentrate as its final product, i.e., stock inventory.

Winterthur's remaining contentions are without merit. Adams, J.P., Luciano, Mastro and Lunn, JJ., concur.